[Cite as *In re D.T.*, 2014-Ohio-2332.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: D.T.
     J.T.
     R.T.
     N.T.

C.A. No.     13CA010451

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE Nos.   12JC36788
               12JC36865
               12JC35294
               12JC35295

DECISION AND JOURNAL ENTRY

Dated: June 2, 2014

WHITMORE, Judge.

{¶1} Appellant, Teresa A. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that adjudicated her minor children neglected and dependent and placed two of them in the temporary custody of a maternal aunt and two of them in the temporary custody of Lorain County Children Services ("LCCS"). To the extent that this Court reaches the merits of Mother's assigned errors, we affirm.

I

{¶2} Mother is the natural mother of five children, four of whom are minors: D.T., born July 22, 1998; J.T., born November 11, 1999; R.T., born May 8, 2003; and N.T., born June 15, 2004. The children's father is not a party to this appeal.

{¶3} On January 31, 2012, LCCS filed complaints alleging that R.T. and N.T. were neglected and dependent children. LCCS apparently confined its complaints to the youngest

children because they had excessive school absences, unlike the older two, and N.T. has Down syndrome. The complaints focused on the children's excessive school absences, the unsanitary condition of the family home, and Mother's neglect of their other basic and special needs. LCCS did not remove R.T. or N.T. from Mother's home but instead sought an order of protective supervision over those two children. It filed an initial case plan that required Mother to work with LCCS and demonstrate that she could provide a safe and sanitary home and meet the needs of her children.

{¶4} The dependency and neglect cases of R.T. and N.T. proceeded to adjudicatory and dispositional hearings before a magistrate. Although the transcript of proceedings is not part of the record on appeal, the record reflects that Mother appeared at the March 2012 evidentiary hearing and was represented by counsel. A few days later, the magistrate adjudicated R.T. and N.T. neglected and dependent children and ordered that they remain in Mother's home under the protective supervision of LCCS and that the parties would be bound by the terms of the initial case plan. The magistrate's decision provided that protective supervision of the children would continue until January 31, 2013.

{¶5} That same day, March 19, 2012, the trial court adopted the magistrate's adjudicatory and dispositional order. Mother filed no objections to the magistrate's adjudication and disposition of R.T. and N.T

{¶6} Throughout the next several months, LCCS suspected that the unsanitary condition of Mother's home had not improved and that none of the children were attending school on a regular basis. It was unable to fully monitor the well-being of the children, however, because Mother refused to allow the caseworker access to the home and would not sign releases of their school or medical records.

{¶7} The caseworker also became concerned about Mother's mental health because she often behaved in an erratic or threatening manner. She also believed that Mother exhibited "distorted thinking" by repeatedly accusing the caseworker of breaking into her house and taking her children and/or possessions. Mother admitted to the caseworker that she had received mental health treatment in the past, but she did not want to engage in any further treatment.

{¶8} LCCS later became concerned that the children were being exposed to domestic violence and drug-related activity in Mother's home after Mother was involved in a traffic accident that resulted from a physical altercation with the children's father while Mother was driving under the influence. Mother admitted that there was violence in her relationship with the father and that she used drugs, but she would not agree to obtain treatment for either problem.

{¶9} On July 5, 2012, LCCS filed an amended case plan, which required Mother to address some of the additional problems that it had observed during the past few months. Although Mother filed initial objections to the amended case plan, she later entered into an agreement with LCCS. On July 26, after the caseworker was able to gain access to Mother's home, she concluded that it was in a deplorable condition and that it was not safe for the children to continue living there. Mother agreed to place all four children with relatives while she worked on the goals of an amended case plan. Through an order filed July 27, 2012, which was signed by Mother and other parties, the trial court approved the amended case plan "[b]y agreement of the parties." Shortly afterward, LCCS sought dispositional orders to formally remove R.T. and N.T. from Mother's custody.

{¶10} On August 7, 2012, LCCS filed complaints to allege that D.T. and J.T. were also neglected and dependent children and sought dispositional orders to remove them from Mother's custody. The complaints alleged that LCCS had been involved with the family through the cases

of R.T. and N.T., but that Mother had refused to work on the goals of her case plan or otherwise cooperate with the agency. In addition to the unsanitary condition of Mother's home and her inability to meet the basic needs of her children, LCCS alleged that Mother had untreated mental health and/or substance abuse problems that prevented her from providing a suitable home for her children.

{¶11} Mother's trial counsel later became concerned that Mother's untreated mental health problems posed a serious obstacle to her ability to look out for her own best interest. On August 30, 2012, counsel moved the trial court to appoint a guardian ad litem to represent Mother because he believed that her "perception of the situation is distorted." He further explained that, over the several months that he had been representing Mother in the cases of R.T. and N.T., he had observed "a steady decline in her ability to understand the situation[.]" The trial court appointed a guardian ad litem, who represented Mother throughout the proceedings that followed.

{¶12} Hearings on the adjudication of D.T. and J.T. and on the disposition of all four children were held before a magistrate over a four-day period during October, November, and December, 2012. On January 2, 2013, the magistrate adjudicated D.T. and J.T. neglected and dependent children, placed D.T. and N.T. (the boys) in the temporary custody of LCCS, and placed J.T. and R.T. (the girls) in the temporary custody of a maternal aunt with protective supervision by LCCS.

{¶13} Following the January 2013 magistrate's decision, Mother filed timely written objections, asserting that the magistrate's decision was against the manifest weight of the evidence. Specifically, she asserted that LCCS had failed to present clear and convincing evidence to establish that D.T. and J.T. were neglected or dependent children and had also failed

to prove that it was in the best interests of all four children to be placed outside her home. Mother supported her objections with a transcript of the proceedings before the magistrate, to which she cited extensively.

{¶14} The trial court overruled Mother's objections and entered an adjudicatory and dispositional judgment in accordance with its earlier adoption of the magistrate's decision. Mother appeals and raises three assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶15} Mother's first assignment of error is that the trial court's adjudication and disposition of all four of her children was against the manifest weight of the evidence. In response to Mother's argument, LCCS first argues that this Court lacks jurisdiction to address Mother's challenge to the adjudication of R.T. and N.T. because she did not timely appeal from the trial court's March 19, 2012 adjudication and initial disposition of those two children.

{¶16} Although this appeal involves all four of Mother's minor children, LCCS initially filed complaints involving only the youngest two: R.T. and N.T. Following adjudicatory and dispositional hearings, the magistrate filed a decision on March 19, 2012 that R.T. and N.T. were neglected and dependent children and that they should remain in Mother's custody under an order of protective supervision. That same day, the trial court adopted the magistrate's decision. Mother did not file written objections to the magistrate's decision.

{¶17} Nevertheless, LCCS argues that the trial court's March 19, 2012 order was final and appealable and that, because Mother did not appeal that order within 30 days, her appeal from that order is untimely. As sole support for its argument, LCCS relies on a line of Ohio

Supreme Court cases, all of which addressed the finality of dispositional orders that are legally distinguishable from the March 19, 2012 order at issue here.

{¶18} In *In re Murray,* 52 Ohio St.3d 155 (1990), syllabus, the Supreme Court affirmatively answered the specific issue before it: "whether a finding of child neglect or dependency, *coupled with a temporary commitment of that child to the custody of the department of human services pursuant to R.C. 2151.353(A)(2)*, is a final order sufficient to invoke appellate jurisdiction of the court of appeals." (Emphasis added.) *Id*. at 156-157. In the *Murray* syllabus, the Court held that a juvenile court's adjudication of a child as dependent or neglected "followed by a disposition awarding temporary custody to a public children services agency pursuant to R.C. 2151.353(A)(2)" is a final, appealable order because it qualifies as an order that affects a substantial right and, in effect, determines the action under R.C. 2505.02(B)(1).[1]

{¶19} Each time the Supreme Court has addressed this issue, the case has involved an analogous juvenile court order that adjudicates the child abused, neglected, and/or dependent and places the child in the temporary custody of a children services agency. *See, e.g.*, *In re C.B.*, 129 Ohio St.3d 231, 2011-Ohio-2899; *In re H.F.*, 120 Ohio St.3d 499, 2008-Ohio-6810. The Court has repeatedly emphasized that its determination that a juvenile court's adjudication is final and appealable has hinged, at least in part, on the fact that the adjudication was coupled with a dispositional order that removed the child from the parents' custody because "a parent does have a substantial right in the custody of his or her child." *C.B.* at ¶ 11, citing *In re Adams*, 115 Ohio St.3d 86, 2007-Ohio-4840, ¶ 43.

---

[1] In a concurring opinion, Justice Douglas reasoned that the order was final under R.C. 2505.02(B)(2) as one that affects a substantial right in a special proceeding. The Supreme Court cases since *Murray* have tended to focus on finality under both R.C. 2505.02(B)(1) and (B)(2).

{¶20} *C.B.* further emphasized the Court's reasoning in *Murray* "that parents of children who have been adjudicated neglected or dependent, *and who have been deprived of the custody of their children*, have a right to immediate appellate review 'to determine if such deprivation meets the requirements justifying such deprivation[.]'" (Emphasis added.) *Id.*, quoting *Murray* at 159. Finally, in *H.F.*, the Ohio Supreme Court addressed a similar order and again hinged its finality determination on the removal of the children from the parents' custody: "[a]n appeal of an adjudication order of abuse, dependency, or neglect and the award of temporary custody pursuant to R.C. 2151.353(A)(2) must be filed within 30 days of the judgment entry pursuant to App.R. 4(A)." *H.F.*, 2008-Ohio-6810, at syllabus. Therefore, LCCS has failed to cite any authority to support its argument because the Ohio Supreme Court has never addressed the specific issue raised in this appeal: whether a juvenile court's order is final and appealable if it adjudicates children neglected and dependent but issues a dispositional order that provides for protective supervision of them while they remain in the custody of their mother.

{¶21} The Supreme Court has always explicitly based its finality determination on R.C. 2505.02(B)(1) and/or R.C. 2505.02(B)(2). Even though it has made reference to R.C. 2501.02, which provides that a court of appeals has jurisdiction "to review, affirm, modify, set aside, or reverse judgments or final orders * * * including the finding, order, or judgment of a juvenile court that a child is delinquent, neglected, abused, or dependent," it has never relied on that statute to determine whether the order at issue was final and appealable. *See Murray* at 156; *H.F.* at ¶ 7-8. While R.C. 2501.02 suggests that the adjudication, in and of itself, would constitute an appealable order, LCCS has not raised that argument in this appeal, nor has the Supreme Court or this Court directly spoken on that issue. Consequently, we need not address that legal argument here.

**{¶22}** Nevertheless, even if we reject the agency's argument and conclude that Mother's appeal from the adjudication and disposition of R.T. and N.T. is timely, there is nothing in the record to support the merits of her argument. Juv.R. 40(D)(3)(b)(iv) provides:

> Except for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Juv.R. 40(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Juv.R. 40(D)(3)(b).

**{¶23}** Juv.R. 40(D)(3)(b) required Mother to file written objections within 14 days of the magistrate's March 2012 decision and to support any objections to the magistrate's factual findings with a transcript of all the evidence submitted at the hearing. *See* Juv.R. 40(D)(3)(b)(i) and (iii). Mother filed no objections to the magistrate's March 19, 2012 decision that adjudicated R.T. and N.T. neglected and dependent children, however.

**{¶24}** Mother has failed to preserve any challenge to the adjudication of R.T. and N.T. as neglected and dependent children and she has not argued that the adjudication was plain error. Even if she had raised a plain error argument, the record does not include a transcript of the relevant hearing, so this Court would be unable to review the evidence upon which the magistrate based that adjudication. We must presume that the findings made by the magistrate and adopted by the trial court pertaining to the adjudication of R.T. and N.T. were supported by the evidence presented at the hearing. *McLellan v. McLellan*, 10th Dist. Franklin No. 10AP-1105, 2011-Ohio-2418, ¶ 9.

**{¶25}** Consequently, this Court must confine its weight-of-the-evidence review to the trial court's 2013 judgment that adjudicated D.T. and J.T. neglected and dependent children and removed all four children from Mother's custody. We will review the merits of that challenge because Mother properly objected to the magistrate's decision and timely appealed from the trial

court's order overruling her objections and entering judgment. Mother does not challenge any aspect of the trial court's dispositional order, but confines her challenge to the trial court's adjudication of D.T. and J.T. as neglected and dependent children.

{¶26} Although the trial court did not specify the statutory sections upon which it based its adjudications, LCCS had alleged in its complaints that D.T. and J.T. were neglected children under R.C. 2151.03(A)(2) and (6) and dependent children under R.C. 2151.04(B) and (C). Because it was not necessary for the trial court to find more than one statutory basis for each adjudication, we will confine our review to whether the evidence supported adjudications of neglect under R.C. 2151.03(A)(2) and dependency under R.C. 2151.04(B). *See In re D.H.*, 9th Dist. Summit No. 24879, 2010-Ohio-422, ¶ 6.

{¶27} A "neglected child" under R.C. 2151.03(A)(2) is any child "[w]ho lacks adequate parental care because of the faults or habits of the child's parents, guardian, or custodian[.]" A "dependent child" is defined in R.C. 2151.04(B) as a child "[w]ho lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian[.]"

{¶28} LCCS presented ample evidence to support findings of neglect and dependency under each of these provisions. LCCS filed its complaints pertaining to D.T. and J.T. because, although it already had a case plan with Mother to address the unsanitary condition of her home, the excessive school absences of R.T. and N.T., and Mother's untreated mental health and substance abuse problems, Mother had not been cooperating with LCCS to correct any of those problems. The caseworker testified at the hearing that she had visited Mother's home several times during May, June, and July 2012 but was unable to gain access to the home until the end of July. She would knock at the door, hear movement inside, but no one would answer the door. She repeatedly left notes for Mother, but Mother did not call her.

{¶29} Near the end of July 2012, the caseworker was able to gain access to Mother's home, which she described at the hearing as filthy and foul smelling. One of the toilets was filled with feces and, although Mother later testified that the toilet just needed to be flushed, the caseworker testified that the toilet smelled and looked as if it hadn't been cleaned in months. She further explained that the entire house was unclean and cluttered with clothing, trash, and other items.

{¶30} After LCCS was able to obtain releases of the school records of D.T. and J.T., it learned that they also had excessive school absences. D.T. had also been suspended from school several times for starting altercations with other students and teachers. The principal from one of his schools testified that she had repeatedly recommended counseling to address D.T.'s behavioral problems, but Mother refused to follow through. Mother would become upset and start screaming at the principal whenever they spoke about the problem. Mother's answer to D.T.'s behavioral problems was to continually move him to different schools.

{¶31} Several witnesses testified about how Mother's untreated mental health problems affected her ability to provide her children with a safe and stable home. In addition to Mother's refusal to cooperate with LCCS to work on the goals of the case plan, the caseworker explained that her conversations with Mother were typically "erratic" because Mother would jump from one topic to another. Because Mother frequently spoke about several unrelated topics at the same time, the caseworker often had trouble understanding what she was talking about. The caseworker further testified that Mother had threatened the prior caseworker and other LCCS staff members and that she left nonsensical and threatening messages on the caseworker's voicemail.

{¶32} One of Mother's witnesses testified that he had observed Mother have her "ups and downs," explaining that she would be "fine one minute [and] flip out the next." The guardian ad litem also testified that Mother had exhibited erratic behavior and was sometimes hostile toward her. She further observed that Mother was often overwhelmed and did not seem to understand what she needed to do to comply with the case plan. As explained already, it was for similar reasons that Mother's counsel requested that the court appoint a guardian ad litem to represent Mother.

{¶33} Mother admitted that she had felt paranoid and suicidal and that, although she had been prescribed psychiatric medication, she was not taking any at that time. She admitted at the hearing that she "probably could use a Xanax" but insisted that she was not going to be forced to take medication or to engage in counseling. During her testimony, Mother often rambled off topic and/or made irrational and paranoid statements about her interactions with the caseworkers and other circumstances in this case. Her guardian ad litem repeatedly cautioned her to limit her testimony to answering the questions posed to her.

{¶34} Mother's testimony further demonstrated that she lacked any understanding of why her children were removed from her home or that there were problems in her home. Aside from refusing to engage in substance abuse or mental health treatment, Mother insisted that her home was clean when the caseworker came in July 2012. She also stated that D.T. and J.T., who were then 13 and 14 years old, were old enough to clean up after themselves and that if she didn't feel well one day and didn't get out of bed, they could pick up. The children apparently did not keep the house clean, however, nor did they get themselves to school on a consistent basis.

{¶35} LCCS presented ample evidence that Mother had mental health problems that hampered her ability to provide her children with a suitable home, and that she refused to obtain a mental health assessment or engage in any treatment. Based on the evidence presented at the hearing, the trial court could reasonably conclude that D.T. and J.T. were neglected and dependent children under R.C. 2151.03(A)(2) and 2151.04(B). Mother's first assignment of error is overruled.

Assignment of Error Number Two

THE TRIAL COURT ERRED IN NOT LISTENING TO THE ACTUAL MAGISTRATE HEARING TAPES.

{¶36} Mother's second assignment of error is that the trial court erred by failing to listen to the audiotape recordings of the hearing before the magistrate because the transcript includes numerous spots in which the court reporter transcribed oral statements from the audiotape as "unintelligible." Mother did not raise this issue in her objections, however, nor did she suggest that any evidence was missing from the transcript of proceedings. In fact, she supported her argument that the magistrate's decision was against the weight of the evidence with detailed citations to the transcript.

{¶37} Moreover, Mother did not ask the trial court to review the audiotape of the proceedings. If she believed that the trial judge could have been able to discern the "unintelligible" portions of the audiotape that the trained court reporter could not, she was required to obtain "leave of court" for the court to review the evidence through an "alternative technology or manner." Juv.R. 40(D)(3)(b)(iii). Juv.R. 40(D)(3)(b)(iii) further requires an objecting party to support objections to the magistrate's factual findings with a "transcript of all the evidence * * * or an affidavit of that evidence if a transcript is not available." To the extent Mother believed that the "unintelligible" portions of the audiotape recording included evidence

that was relevant to her objection, she should have supplemented the transcript with an affidavit of that evidence. *Id.* Because Mother did not comply with the requirements of Juv.R. 40 to address any defect in the transcript of proceedings before the magistrate, her second assignment of error is overruled.

### Assignment of Error Number Three

APPELLANT WAS DENIED DUE PROCESS TO PRESENT HER CASE WHEN THE MAGISTRATE EXCLUDED THE TESTIMONY OF WITNESSES SHE [SUBPOENAED.]

{¶38} Mother's final assignment of error is that the magistrate erred in excluding the testimony of witnesses who failed to appear at the hearing despite being subpoenaed to testify on her behalf. Although Mother argues that the testimony of those witnesses would have been helpful to her defense, she failed to proffer what the substance of the witnesses' testimony would have been at the time the magistrate decided to exclude their testimony. Evid.R. 103(A)(2).

{¶39} Moreover, Mother's only objection to the magistrate's decision was that it was against the manifest weight of the evidence, not that the decision was in error because witness testimony was excluded. Juv.R. 40(D)(3)(b)(iv) provides that, "[e]xcept for a claim of plain error," which Mother has not argued, "a party shall not assign as error on appeal" the trial court's adoption of the magistrate's decision to exclude the testimony of these witnesses unless she filed timely written objections to that aspect of the magistrate's decision. Because Mother failed to preserve this issue and has not argued plain error, her third assignment of error is overruled.

### III

{¶40} Mother's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

HENSAL, P. J.
CONCURS.

CARR, J.
CONCURRING:

{¶41} I write separately to express my concern that this Court is unable to review the first adjudicatory decision in this case, which could potentially lead to the termination of Mother's rights to those children, because the parties to abuse, neglect, and dependency cases are provided with inadequate procedural mechanisms to protect the significant rights at issue in the case.

**{¶42}** The first stated purpose of R.C. Chapter 2151 is to provide: "for the care, protection, and mental and physical development of children * * * whenever possible, in a family environment, separating the child from the child's parents only when necessary for the child's welfare or in the interests of public safety[.]" R.C. 2151.01(A). The second stated purpose set forth in R.C. 2151.01(B) is to provide procedures "in which the parties are assured of a fair hearing, and their constitutional and other legal rights are recognized and enforced." Ohio courts have long recognized that parents have a fundamental right to raise their children and should be afforded every procedural protection before the State is permitted to intervene. *See In re Hayes*, 79 Ohio St.3d 46, 48 (1997).

**{¶43}** Nonetheless, because cases under R.C. Chapter 2151 are designated "civil" in nature, the parties are limited to the procedural mechanisms available under Ohio's Civil and Juvenile Rules and the civil provisions of the Appellate Rules. With those limited avenues available to protect the rights of the parties, the potential loss of parental rights is essentially treated as nothing more significant than a loss of property. *See In re N.R.*, 9th Dist. Summit Nos. 26834 and 26869, 2013-Ohio-4023, ¶ 32 (Carr, J., Dissenting). Because I believe that "the loss of parental rights is more akin to a loss of life or liberty than to a loss of property[,]" the protections provided to parties within the civil context are inherently inadequate. *Id*. at ¶ 33.

**{¶44}** Although R.C. 2151.352 grants parents a right to counsel at all stages of these juvenile proceedings, there are few procedural safeguards to fully protect parents' fundamental rights to raise their children. For example, although a party's statutory right to counsel inherently includes a right to effective assistance, which can be raised as an error before the court of appeals, parents have no similar method to redress ineffective assistance of appellate counsel. *See, e.g., In re N.J.*, 9th Dist. Lorain No. 12CA010221, 2012-Ohio-5429, ¶ 5; App.R. 26(B).

Similarly, App.R. 5(A) explicitly limits the right to file a delayed appeal to criminal defendants. *But see In re B.C.*, 137 Ohio St.3d 1473, 2014-Ohio-176; 138 Ohio St.3d 1424, 2014-Ohio-692 (appeal number 2013-1932 accepted for review on the question of whether "the delayed appeal provisions of App.R. 5(A) extend to cases involving the termination of parental rights[.]").

{¶45} Of relevance here, a lack of procedural safeguards within the civil setting authorized the trial court to refer the adjudication of Mother's children to a court-appointed magistrate. Because Mother's counsel did not properly object to the adjudication of two of her children under Juv.R. 40 or Civ.R. 53, no transcript of that hearing was prepared and Mother forever lost her ability to obtain meaningful trial court or appellate review of that significant decision. Given that the Ohio Supreme Court has equated an adjudication of abuse, neglect, or dependency with a finding of parental unsuitability, that adjudication is somewhat analogous to a finding of guilt in a criminal case. *See In re C.R.*, 108 Ohio St.3d 369, 2006-Ohio-1191, paragraph two of the syllabus.

{¶46} Although the nature and significance of a dependency and neglect adjudication is comparable to a criminal finding of guilt, the procedures available to protect the rights of defendant parents and to ensure the integrity of the fact-finding process fall short of those afforded a defendant in a criminal case. For example, had Mother faced a loss of life or liberty within a criminal case, there would have been no similar waiver of her right to appellate review of the fact-finding and decision-making process because criminal magistrates lack authority to determine the guilt or innocence of the accused. *See* Crim.R. 19(C) and (D); *State v. Chagaris*, 107 Ohio App.3d 551 (9th Dist.1995). That significant decision cannot be delegated but is the explicit responsibility of the elected judge (or a jury) and is subject to appellate review.

{¶47} Although this Court must follow the Ohio procedural rules, I am deeply concerned that a finding of parental unsuitability escapes appellate review in this case simply because it arose within the context of a civil case. Given the long-standing emphasis by Ohio courts that basic civil rights are at stake in abuse, dependency and neglect cases (both of parents and children), it is time to enact more adequate procedures to protect not only the significant rights of all parties but also the integrity of the process.

APPEARANCES:

BARBARA A. WEBBER, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and EMILY W. KIRSCH, Assistant Prosecuting Attorney, for Appellee.