[Cite as *In re B.B.*, 2016-Ohio-7994.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | | |

IN RE: B.B.

C.A. No.     15CA010880

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.     14 JC 41864

DECISION AND JOURNAL ENTRY

Dated: December 5, 2016

WHITMORE, Judge.

{¶1}    Appellant, Brittany C. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of his maternal grandmother ("Grandmother").  This Court affirms.

I

{¶2}    Mother is the natural mother of B.B., the child at issue in this case.  Although the child's father ("Father") did not appeal from the trial court's judgment, he is relevant to this case because he abused B.B's older half-sibling, J.C., in 2005.  J.C., who was five weeks old at the time of the abuse, was admitted to the hospital with two skull fractures, two fractured vertebrae, six frontal rib fractures, retinal hemorrhaging, and numerous deep scratches on his neck.  J.C. sustained severe and permanent neurological damage from Father's abuse.  After entering a guilty plea, Father was convicted of felonious assault and child endangering and was sentenced to seven years' incarceration.  J.C. was adjudicated an abused, neglected, and dependent child,

and was ultimately returned to the custody of his mother while Father was incarcerated and unable to have any contact with the child.

{¶3} Although Father admitted that he had caused J.C. to suffer severe cognitive delays and that the child would continue to have the mentality of an infant, he denied that he had lost his temper and/or shaken J.C. Instead, he continued to insist that he merely had been irresponsible while playing with J.C. and could not understand how the child suffered such extensive injuries. Therefore, Father did not engage in mental health counseling while in prison and, although he participated in some anger management groups, he did not focus on developing appropriate anger management skills because he did not believe that he had a problem controlling his anger.

{¶4} Shortly after Father was released from prison in 2012, he became romantically involved with Mother. Mother knew about Father's conviction for causing serious physical harm to J.C., but she did not believe that he posed a threat to another baby. The two decided to have a child together and B.B. was born on November 1, 2013.

{¶5} Approximately 12 weeks after B.B. was born, Mother returned to work full time and left the infant in the care of Father. Lorain County Children Services ("LCCS") was contacted during February and March 2014 because B.B. was hospitalized two separate times with symptoms that suggested that he had been physically abused. The agency then became aware of Father's prior abuse of J.C. and that he had been B.B.'s sole caretaker while Mother was at work. The family initially agreed to a safety plan with LCCS, which provided that Father would move out of the home and have no contact with B.B. until LCCS was able to complete its investigation. The parents did not abide by that agreement, however, because Father continued to have contact with B.B.

{¶6} Consequently, on April 4, 2014, LCCS filed a complaint to allege that B.B. was a dependent child. Although LCCS had been unable to substantiate any abuse of B.B., it was concerned that Father had caused severe physical harm to J.C. as an infant and that both parents minimized the significance of that abuse and/or Father's need to address his behavior that had caused J.C.'s injuries.

{¶7} Following adjudicatory and dispositional hearings held before a magistrate, and without subsequent objections by any party, the trial court adopted the magistrate's decision to adjudicate B.B. a dependent child on July 11, 2014. The trial court allowed B.B. to remain in the custody of Mother under an order of protective supervision. The trial court also prohibited Father from residing in the home with B.B. or having any unsupervised contact with him until further order of the court.

{¶8} The case plan in this case focused primarily on Father completing a psychological evaluation, both parents completing parenting evaluations, and the parents following any treatment recommendations that resulted from those evaluations. Although both parents engaged in some case plan services, they continued to minimize the significance Father's abuse of J.C. Notably, neither parent would admit that Father had abused J.C. and/or that he had a problem controlling his anger. Both continued to insist that Father accidentally harmed J.C. and that he posed no threat to B.B.

{¶9} Throughout the next year of this case, Father continued to deny that he had lost his temper with J.C. Moreover, he would not recognize that J.C.'s past injury had any bearing on his current parenting ability. Father repeatedly stated that J.C.'s injuries were a "closed chapter" in his life and that the incident was "done and over with[,]" but that LCCS would not let it go. Father described himself as a "happy, joking person" and insisted that he had no problem

controlling his anger. Therefore, Father did not comply with the case plan requirements that he engage in anger management classes and counseling to address his anger and violent behavior.

{¶10} Although Father and Mother engaged in some parenting education classes, according to the counselor who taught them, neither parent put forth any effort to gain parenting skills from the classes. Father also gave him several different accounts of how he had injured J.C., none of which the counselor could believe. The counselor emphasized that Father's inability to be honest with him was one of several obstacles to him making progress in their parenting sessions.

{¶11} Father had seriously injured J.C., entered a guilty plea to his crimes, and served seven years in prison, yet he continued to insist that J.C.'s injuries had been an accident. Not only had Father refused to engage in any counseling or anger management services to remedy his abusive behavior, but he also had failed to take the first step toward remedying his problem by admitting that he had one. LCCS was primarily concerned that neither parent believed that Father posed a risk to B.B. For that reason, LCCS was concerned that Mother would allow Father to have unsupervised contact with B.B. if LCCS and the juvenile court were no longer involved with the family. In fact, both parents had told others that they wanted to live together with B.B. as a family and get LCCS out of their lives.

{¶12} At some point during this case, apparently for financial reasons, Mother and B.B. moved to the home of Grandmother, who then began supervising Father's visits with B.B. Grandmother had always been concerned about the risk that Father posed to B.B. and had assured LCCS that she would not leave Father alone with B.B. until he complied with the case plan and the court approved unsupervised visits.

{¶13}  Because Mother and Father continued to deny that Father posed a threat to B.B., LCCS eventually moved the trial court to place B.B. in the legal custody of Grandmother. Mother alternatively moved to have full legal custody restored to her.  Following a hearing on the dispositional motions, the trial court granted legal custody to Grandmother.  Mother appeals and raises three assignments of error.

I

Assignment of Error Number One

THE TRIAL COURT'S DETERMINATION THAT B.B. WAS A DEPENDENT CHILD WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, CONSTITUTED AN ABUSE OF DISCRETION AND PLAIN ERROR, AND VIOLATED MOTHER'S RIGHTS TO DUE PROCESS AND EQUAL PROTECTION UNDER THE U.S. AND OHIO CONSTITUTIONS.

Assignment of Error Number Two

THE MAGISTRATE'S DECISION OF JULY 11, 2014 WAS DEFECTIVE ON ITS FACE AS IT DID NOT CONTAIN LANGUAGE MANDATED BY OHIO CIV.R. 53(D), REQUIRING REVERSAL AND REMAND OF THIS MATTER TO THE TRIAL COURT, OR ALTERNATIVELY, REQUIRING AN EVALUATION OF THE MERITS OF MOTHER'S ASSIGNMENT OF ERROR I UNDER A *DE NOVO* STANDARD OF REVIEW, AND NOT PLAIN ERROR.

{¶14}  Mother's first two assignments of error pertain solely to the trial court's July 2014 judgment that adjudicated B.B. a dependent child and placed him under the protective supervision of LCCS.  This Court initially questions its jurisdiction to determine the merits of these assignments of error because, according to App.R. 4(A), a notice of appeal must be filed within 30 days of a final, appealable order.  An untimely notice of appeal does not invoke this Court's jurisdiction.  *See Transamerica Ins. Co. v. Nolan*, 72 Ohio St.3d 320 (1995), syllabus. Mother did not appeal from the July 2014 judgment until after the trial court's final disposition of B.B. more than one year later.

{¶15}  This Court is not persuaded by Mother's argument that the July 2014 adjudicatory and dispositional order did not become final and appealable until the final legal custody disposition of the case.  She apparently misinterprets this Court's reasoning in *In re D.T.*, 9th Dist. Lorain No. 13CA010451, 2014-Ohio-2332, ¶ 17-21.  In *In re D.T.*, a timely appeal from the adjudication of two of the mother's four minor children, LCCS questioned the timeliness of mother's attempt to appeal a prior judgment that had adjudicated her younger two children and allowed them to remain in the home under an order of protective supervision.  *See id*.  This Court did not resolve the merits of the timeliness argument in *In re D.T.*, however.  Instead, the opinion explicitly emphasized that, because LCCS did not argue why *In re Murray*, 52 Ohio St.3d 155 (1990), and a line of cases involving adjudication and removal of the children from the home should be extended to a case in which the children were not removed from the home, this Court declined to reach the merits of the finality/timeliness argument.  *Id*. at ¶ 21.  This Court ultimately concluded that even if the mother's challenge to the prior adjudication was timely, we could not reach its merits because the mother had failed to file timely objections to the magistrate's decision and the record did not include a transcript of that hearing to enable a review for plain error.  *Id*. at ¶ 21-23.

{¶16}  *In re D.T.* did not hold that an adjudication of dependency and disposition of protective supervision to the agency is not a final, appealable order.  In fact, this Court has assumed jurisdiction over similar judgments in other appeals.  *See, e.g*., *In re M.T.-B*., 9th Dist. Summit No. 26866, 2013-Ohio-4998.  Even when the child is permitted to remain in the parent's custody under an order of protective supervision, this Court has implicitly extended the finality reasoning of the Ohio Supreme Court in cases such as *In re H.F*., 120 Ohio St.3d 499, 2008-Ohio-6810; *In re Adams*, 115 Ohio St. 3d 86, 2007-Ohio-4840; and *In re Murray*.  *In re H.F*.

implicitly stressed that an adjudication of a child as abused, neglected, and/or dependent, followed by any temporary disposition, affects the substantial rights of the parents and that the immediate actions between the parties, as set forth in the complaint, are concluded at that point. *Id*. at ¶ 13. Moreover, the adjudication is not subject to reconsideration by the trial court and, if not final and appealable, would not be subject to appellate review if the child is ultimately returned to the custody of one or both parents. *See id*. at ¶ 14-15.

{¶17} Because the adjudication and disposition of B.B. in July 2014 was a final, appealable order and Mother failed to timely appeal from that judgment, this Court lacks jurisdiction to reach the merits of her challenges to it. For that reason, this Court does not reach the merits of Mother's first and second assignments of error.

Assignment of Error Number Three

> THE TRIAL COURT ERRED IN GRANTING LEGAL CUSTODY TO MATERNAL GRANDMOTHER AND IN DENYING MOTHER'S MOTION FOR LEGAL CUSTODY BECAUSE IT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, THE AGENCY DID NOT ENGAGE IN REASONABLE EFFORTS TO REUNIFY THE CHILD WITH MOTHER, AND THERE WAS NO EVIDENCE THAT THE CHILD'S BEST INTERESTS WERE SERVED BY GRANTING LEGAL CUSTODY TO MATERNAL GRANDMOTHER.

{¶18} Mother's final assignment of error is that the trial court erred in placing B.B. in the legal custody of Grandmother rather than returning the child to her legal custody. After an adjudication of abuse, neglect, or dependency, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child. *See In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. "Although there is no specific test or set of criteria set forth in the statutory scheme, courts agree that the trial court must base its decision [regarding legal custody] on the best interest of the child." *In re*

*N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23, citing *In re Fulton*, 12th Dist. Butler No. CA2002-09-236, 2003-Ohio-5984, ¶ 11.

{¶19} The sole focus of the legal custody hearing was on the parenting ability of each potential custodian (Mother and Grandmother) and whether it was in the best interest of B.B. to be permanently placed in the legal custody of either of them. *See In re K.C.*, 9th Dist. Summit Nos. 26992, 26993, 2014-Ohio-372, ¶ 20. Mother makes no argument on any of the best interest factors, however, nor does she explain why placing B.B. in her legal custody rather than Grandmother's would be in the child's best interest. Instead, Mother focuses her argument on the adjudication of B.B. and whether LCCS made reasonable efforts to reunify her with her child.

{¶20} Despite Mother's argument to the contrary, LCCS did not take the position that there was nothing that Mother could do to regain custody of her child. The agency developed a reunification case plan, which required Mother and Father to admit: that Father had abused J.C.; that he posed a potential threat to B.B.; that he must undergo parenting classes, anger management, and ongoing counseling to develop appropriate coping skills for dealing with his anger; and that Father's interaction with B.B. must be appropriately supervised until his service providers determined that he did not pose a risk to B.B. Father and Mother refused to admit that Father had an anger management or other behavioral problem and Father refused to undergo counseling to address that problem. Mother planned to continue a relationship with Father and refused to recognize that he posed a risk to B.B.

{¶21} Rather than working on the requirements of the case plan to regain custody of their child, Mother and Father spent the next year disputing the need for LCCS and court involvement in their lives. The primary focus of Mother's appeal is on the merits of the

adjudication and whether LCCS was reasonable in requiring Father and Mother to engage in services to address the risk that Father posed to B.B. because of his past abuse of J.C. Neither parent challenged the adjudication through a timely appeal to this Court, however, and this Court lacks jurisdiction to reach the merits of the adjudicatory decision. Because Mother has raised no argument to undermine the propriety of the trial court's legal custody decision, her third assignment of error is overruled.

### III

**{¶22}** Mother's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETH WHITMORE
FOR THE COURT

MOORE, P. J.
SCHAFER, J.
<u>CONCUR.</u>

<u>APPEARANCES:</u>

KATHLEEN M. AMERKHANIAN, Attorney at Law, for Appellant.

CARA M. FINNEGAN, Attorney at Law, for Appellee.

AURELIE HIGGINS, Guardian ad Litem.