[Cite as *In re A.S.*, 2018-Ohio-4197.]

STATE OF OHIO          )                IN THE COURT OF APPEALS
                          )ss:           NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: A.S.                            C.A. No.     28936

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    DN 17-01-035

DECISION AND JOURNAL ENTRY

Dated: October 17, 2018

CARR, Presiding Judge.

{¶1} Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted legal custody of her child A.S. to Father. For the following reasons, this Court affirms.

I.

{¶2} Mother and Father are the biological parents of A.S. (d.o.b. 11/30/12). The parents were married at the time the child was born, but divorced shortly thereafter. Mother is also the biological mother of three older daughters, J.G.-1, J.G.-2, and J.J. In addition, Father is also the biological father of an older son, I.S. Those four children are not subjects of this appeal, but they are relevant to the issues herein.

{¶3} At the time A.S. was born, Mother and Father were living together in Kentucky. I.S. visited regularly, and J.G.-1 stayed with them for a while. J.G.-2 and J.J., however, resided with their maternal grandmother. When Father informed Mother that he wanted a divorce,

Mother left Kentucky and relocated to Ohio, leaving the infant A.S. with Father until she got settled. Thereafter, Mother and Father orally agreed that A.S. would alternate between their homes, two to three months at a time.

{¶4} Not long after relocating to Ohio, Mother married Mr. W. Mother's three older daughters lived with them, and A.S. visited pursuant to Mother's and Father's agreed rotation schedule. In October 2016, Summit County Children Services Board ("CSB") received a referral that J.G.-1 had disclosed that Mr. W. had been molesting her for two years. About a week later, Mother informed a CSB caseworker that J.G.-1 had gone to stay at Safe Landing, and that Mr. W. had left the family home. When Mother failed to pick J.G.-1 up from Safe Landing after her permissible time at the facility expired, Safe Landing contacted CSB. The agency sought emergency temporary custody of J.G.-1, and filed complaints alleging that J.G.-1 was abused, neglected, and dependent; and that J.G.-2, J.J., and A.S. were dependent. A.S. was in the physical custody of Father at the time, as she was visiting with him for a couple months. Father filed a motion for temporary custody of A.S. the same day as the agency filed its complaint.

{¶5} At the shelter care hearing, the juvenile court ordered that J.G.-1 remain in the emergency temporary custody of CSB, that J.G.-2 and J.J. remain with Mother under an order of protective supervision by the agency, and that A.S. remain with Father in his temporary custody under an order of protective supervision. The record contains no further orders regarding J.G.-1, J.G.-2, or J.J. At the adjudicatory hearing, Mother and Father stipulated that A.S. was a dependent child. The juvenile court continued her in the temporary custody of Father under protective supervision pursuant to the prior interim order, and ordered that Mother could have visitation as the parties may agree. After the dispositional hearing, the juvenile court reaffirmed those orders.

{¶6} Mother and Father each filed a motion for legal custody of A.S. After a hearing, the magistrate issued an order awarding legal custody to Father, terminating the agency's protective supervision, and ordering that Mother shall have visitation with the child as the parents might agree. Mother filed objections to the magistrate's decision, and Father responded in opposition. The juvenile court issued a judgment, overruling Mother's objections, granting legal custody of A.S. to Father, terminating CSB's protective supervision, and ordering visitation for Mother as the parents might agree. Mother filed a timely appeal in which she raises one assignment of error for review.

## II.

### ASSIGNMENT OF ERROR

THE TRIAL COURT'S DECISION DENYING MOTHER'S MOTION FOR LEGAL CUSTODY AND GRANTING FATHER'S MOTION FOR LEGAL CUSTODY WAS NOT SUPPORTED BY A PREPONDERANCE OF THE EVIDENCE; WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE; CONTRARY TO LAW, AND/OR CONSTITUTED AN ABUSE OF DISCRETION.

{¶7} Mother argues that the juvenile court's award of legal custody to Father was against the manifest weight of the evidence.

On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

**{¶8}** In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

**{¶9}** "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976, 26977, 2014-Ohio-2748, ¶ 16. In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos.

15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶10} Over the course of her pre-school life, A.S. has lived with Mother and Father together, and, after the parents separated, alternately with Mother and Father as the parents have agreed. While with Father, the child has shared a home with her older brother. As Mother's three older children have resided outside of Mother's physical custody for various periods of time, A.S. has shared a home with them on occasion. A.S. resided in Father's home exclusively for the nine months immediately preceding the legal custody hearing.

{¶11} A.S. is indisputably well bonded with both Mother and Father. She also enjoys a good relationship with all four of her half-siblings and her step-mother. The child is well-adjusted in Father's home in Kentucky, but there was no evidence that she had difficulty re-acclimating to her environment when with Mother. Both Father's home and Mother's home were deemed to be safe and appropriate by the agency caseworker and the guardian ad litem. Although Father resides in Kentucky, the child was born there and has been traveling back and forth between Kentucky and Ohio her whole life except for the short period of time that Mother and Father lived together. Except for one time when Mother traveled half-way to Kentucky, Father has always provided the transportation of the child for visits. He has agreed to continue to do so, given Mother's lack of transportation.

{¶12} Both parents have demonstrated the ability to meet the basic needs of the child. A.S. has no special needs. There are no concerns about the physical or mental health of the child

or either parent. J.G.-1 has some mental health issues and was in a residential treatment facility at the time of the hearing. Mother and J.G.-1 were estranged and having limited to no contact with one another, so it is unknown under what conditions and circumstances J.G.-1 might return to Mother's home, and how J.G.-1's return might affect Mother's household.

{¶13} A.S. is too young reasonably to express her wishes regarding custody. The guardian ad litem declined to make a definitive recommendation. Instead, he expressed his wish that Mother and Father could come to an agreement as to how they could parent the child jointly. The guardian opined that both parents were capable of raising the child appropriately. His only concern was that A.S. would not be able to maintain a consistent relationship with all of her half-siblings at the same time, no matter in whose custody the child was placed. Because the child is now of school age, the parents' prior agreement to alternate physical custody every two to three months would no longer be feasible.

{¶14} A.S., as any other child, requires permanence and consistency. Father has demonstrated that he is capable of providing both. Father and his wife are both employed, and have stable incomes. Father has enrolled the child in both daycare and a pre-kindergarten program. He remains willing and able to facilitate visitation between Mother and the child. The child has many relatives, both paternal and maternal, in Kentucky; and she sees them frequently. She is well-adjusted, stable, and happy in Father's home. Father has not had any other involvement with the child welfare system.

{¶15} While Mother currently has a job and stable housing, she once left the child with Father when she had to move into a shelter. At the time of the hearing, Mother was in the process of a divorce from Mr. W. who allegedly was sexually abusing J.G.-1 over a two-year period in Mother's home. A.S. would have been living with Mother at certain times when the

alleged abuse occurred. In addition, Mother has had prior involvement with a child welfare system in Kentucky regarding her three older children. That case arose out of allegations of domestic violence and abuse.

{¶16} Based on a review of the evidence, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in awarding legal custody of A.S. to Father. The evidence demonstrates that the child has always had a home with Father, even though the parents alternated physical custody of the child after their separation. Due to the fact that A.S. has now attained an age when she will be going to school, alternating custody every two to three months is no longer feasible. The child is comfortable with Father, his wife, and the child's half-brother; and she is acclimated to their home in Kentucky. Both parents currently have stable incomes and housing and have been deemed appropriate by the guardian ad litem. The dynamics in Father's home, however, are currently more stable than those in Mother's home. While J.G.-2 and J.J. are living with Mother, they were both still under the protective supervision of CSB at the time of the legal custody hearing. In addition, the relationship between Mother and J.G.-1 was strained, and the future situation regarding that child and the impact of that situation on Mother's home remained uncertain. Even though Father's home is approximately five hours away from Mother's, Father has agreed to continue to facilitate visitation between Mother and A.S., even absorbing the full responsibility for transporting the child. Father indicated his willingness to allow A.S. to spend substantial amounts of time visiting Mother during the summer and other breaks from school. Under the circumstances, the juvenile court's finding that an award of legal custody of A.S. to Father was in the child's best interest was not against the manifest weight of the evidence. Accordingly, Mother's assignment of error is overruled.

III.

{¶17} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
DONNA J. CARR
FOR THE COURT

HENSAL, J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

JAMES K. REED, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.