[Cite as *In re E.B.*, 2022-Ohio-2568.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

IN RE: E.B.

C.A. No.     30238

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.     DN 21 06 0420

DECISION AND JOURNAL ENTRY

Dated: July 27, 2022

SUTTON, Judge.

{¶1}   Appellant Mother appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that granted legal custody of her child E.B. to the child's maternal grandmother and step grandfather ("Grandmother," "Grandfather," or collectively "Grandparents"). This Court affirms.

I.

{¶2}   Mother is the biological mother of E.B., born February 8, 2018. The child's paternity was never established. The sole alleged father died prior to the issuance of the juvenile court's judgment.

{¶3}   When E.B. was three years old, Summit County Children Services Board ("CSB" or "the agency") received a report that Mother was using drugs and leaving the child home alone for extended periods of time. After multiple unsuccessful attempts, the agency contacted Mother who agreed to submit to an oral swab for drugs. Mother tested positive for extremely high levels

of fentanyl and norfentanyl (a metabolite of fentanyl) which indicated a high tolerance and significant history of use. When the agency could not reach Mother to discuss a safety plan within ten days of her positive drug screen, CSB filed a complaint in which it alleged that E.B. was an abused and dependent child. The agency removed the child pursuant to an emergency order of temporary custody.

{¶4} After an adjudicatory hearing, the magistrate found that CSB had not demonstrated that the child was at significant risk of harm to establish abuse and, therefore, dismissed the complaint in full. The agency filed an objection to the magistrate's dismissal. Upon review, the juvenile court overruled the agency's objection as to the dismissal of the abuse allegation but sustained the objection as to the child's dependency. After remand to the magistrate for disposition, CSB obtained temporary custody of E.B. and placed her with Grandparents. The juvenile court adopted the agency's proposed case plan as an order.

{¶5} Pursuant to the case plan, Mother was required to obtain a substance abuse and/or mental health assessment and follow all recommendations for services necessary to address any issues identified by the assessment. In addition, she was required to address specific parenting concerns regarding her supervision of the child by identifying and implementing a reliable childcare plan for E.B.

{¶6} When Mother failed to take any action regarding her case plan objectives during the next three months, CSB filed a motion for legal custody to Grandparents. After an evidentiary hearing, the magistrate granted the agency's motion. Mother filed a timely objection and the agency responded in opposition. After review, the juvenile court overruled Mother's objection, granted CSB's motion, and awarded legal custody of E.B. to Grandparents. Mother was to have supervised visitation as arranged by Grandmother and Mother until such time as Mother

demonstrated a sustained period of sobriety and Grandmother determined that the child would be safe during unsupervised visits. Mother filed a timely appeal and raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION IN [THAT] ITS GRANT OF LEGAL CUSTODY TO [GRANDPARENTS] WAS NOT SUPPORTED BY THE EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

**{¶7}** Mother argues that the juvenile court's award of legal custody to Grandparents was against the manifest weight of the evidence. This Court disagrees.

**{¶8}** In support, Mother cites a plethora of case law for the proposition that a court may not award legal custody of a child to a non-parent in the absence of a finding of parental unsuitability. None of the cases she cites, however, involve the custodial disposition of a child who has been adjudicated dependent, neglected, or abused. Those cases, therefore, are inapposite to the issue before this Court.

**{¶9}** The law is well settled: "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12.

On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶10} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶11} The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976 and 26977, 2014-Ohio-2748, ¶ 16.

{¶12} In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850 and 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the child's

adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶13} While the agency placed E.B. with Grandparents when she was three years old, the child had earlier lived with them for seven months. In addition, Grandparents had frequent contact with E.B. since her birth. The child is comfortable in Grandparents' home where all her basic needs are being met. There is a strong bond between the child and Grandparents.

{¶14} The extent of the child's bond with Mother is not fully known. The caseworker testified that she was only able to observe one of Mother's visits because Mother visited so infrequently and inconsistently with E.B. Mother behaved appropriately during the visit and the child appeared comfortable sitting on Mother's lap. Because Mother failed to respond to attempts by the guardian ad litem to contact her, the guardian was unable to observe any visits. When the guardian ad litem visited Grandparents' home to see E.B., Mother was never present.

{¶15} Grandmother testified that Mother stopped by to visit with the child approximately every three and a half weeks. Mother's most recent visit with the child consisted of Mother merely napping on the couch. Grandmother did not know why Mother declined to take advantage of the opportunity to visit with E.B., although she noted that Mother had a new boyfriend, implying that Mother was spending time with him instead.

{¶16} Grandmother testified that she and Grandfather understood the significance of an award of legal custody and that they were willing to provide for the child's basic needs until she reached the age of majority, while respecting Mother's residual parental rights regarding E.B. Grandmother asserted that she would continue to provide opportunities for Mother to visit with

the child and would supervise those visits until Mother demonstrated sustained sobriety and the ability to provide a safe environment for unsupervised visits.

{¶17} Throughout the case, Mother showed no indication that she was willing to engage in services that would help her seek reunification with E.B. After initially testing positive for high levels of fentanyl and its metabolite early in the case, Mother denied any drug use, refused to submit to additional drug swabs, and failed to submit to a substance abuse assessment. Moreover, despite the opportunity to visit with the child on a regular basis in Grandmother's home, Mother rarely went to see E.B. Mother failed to keep in contact with the caseworker, the guardian ad litem, and her own attorney while the case was pending. She failed to appear for the custody hearing.

{¶18} E.B. is too young to express her wishes regarding custody. The guardian ad litem opined that it was in the child's best interest to be placed in Grandparents' legal custody, as she would continue to receive the care and nurturing necessary for the child's development. Grandparents' home is safe and stable. Given Mother's failure to maintain contact with the caseworker and guardian ad litem or engage in any way in her case plan objectives, there was no evidence that Mother had remedied the conditions leading to the child's removal or that she could provide a safe, stable, and supervised environment for the child who is too immature to protect herself.

{¶19} Based on a thorough review of the record, this is not the exceptional case in which the trier of fact clearly lost its way and created a manifest miscarriage of justice by awarding legal custody of the child to Grandparents. The agency demonstrated by a preponderance of the evidence that it is in the child's best interest to remain with Grandparents in their legal custody. E.B. is in an appropriate home with family members who provide the care and supervision the

child requires. The child will be able to visit with Mother under conditions that will ensure her safety while allowing the preservation and development of a parent-child bond. Mother's denial of her significant substance abuse issues and her failure to prioritize her opportunity to participate in reunification efforts demonstrated Mother's inability to provide an appropriate home for the child. Accordingly, the juvenile court's judgment awarding legal custody to Grandparents was not against the manifest weight of the evidence. Mother's assignment of error is overruled.

## III.

{¶20} Mother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____

BETTY SUTTON
FOR THE COURT

HENSAL, P. J.
CALLAHAN, J.
CONCUR.

APPEARANCES:

THOMAS C. LOEPP, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.