[Cite as *In re H.O.*, 2019-Ohio-1082.]

| STATE OF OHIO | ) | | IN THE COURT OF APPEALS |
|---|---|---|---|
| | )ss: | | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | | |

IN RE: H.O.
      K.O.

C.A. No.     29231

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 17-02-0115
                     DN 17-02-0116

DECISION AND JOURNAL ENTRY

Dated: March 27, 2019

---

CARR, Judge.

**{¶1}** Appellant Father appeals the judgment of the Summit County Court of Common Pleas, Juvenile Division, that awarded legal custody of the children, H.O. and K.O., to appellee Mother. This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of H.O. (d.o.b. 12/29/09) and K.O. (d.o.b. 4/18/11). Based on a prior dependency action in 2011, the children were placed in the legal custody of Father. In early 2017, Father left the children with Mother after telling her that he had a construction job out of state. In truth, Father was required to attend alcohol dependence treatment at the Interval Brotherhood Home ("IBH") during that time. While in Mother's care, the children were taken into custody pursuant to Juv.R. 6, after Mother was arrested on an outstanding felony warrant. Based on Father's unavailability, a history of substance abuse issues for both parents, and a multi-county history for both parents with child welfare agencies, Summit

County Children Services Board ("CSB" or "the agency") filed complaints alleging that H.O. and K.O. were neglected and dependent children.

{¶3} At the adjudicatory hearing, CSB withdrew one allegation of neglect and one allegation of dependency, leaving an additional allegation of both neglect and dependency remaining for each child. Mother and Father waived their rights to a hearing and stipulated to the allegations in the complaints. Based on those stipulations, the juvenile court found H.O. and K.O. to be dependent children pursuant to R.C. 2151.04(C), but dismissed the remaining allegations of neglect pursuant to Juv.R. 29.

{¶4} At the dispositional hearing, the parents again waived their rights to a hearing, and all parties agreed to an award of temporary custody of the children to CSB and that Mother and Father would have supervised visitation. The juvenile court adopted the agency's case plan as the order of the court. A month later, the parties agreed to an order of temporary custody of the children to their paternal aunt under an order of protective supervision by CSB.

{¶5} Subsequently, CSB filed a motion to modify temporary custody to legal custody to Father, and to terminate the agency's protective supervision. Father and Mother filed competing motions, each seeking legal custody of the children.

{¶6} The guardian ad litem for the children filed three reports regarding disposition based on her ongoing investigation. In her first report, she opined that it was in the best interest of the children to remain in the temporary custody of the paternal aunt with protective supervision by the agency based on Father's limited period of sobriety after his release from IBH. In her second report, the guardian ad litem recommended an award of legal custody to Father and a termination of the agency's protective supervision. In her third report, filed after the second day of the dispositional hearing but before the magistrate issued a decision, the

guardian ad litem recommended an award of legal custody to Mother based on recent allegations, incidents, and changes in Father's circumstances.

{¶7} After consideration, the magistrate found that an award of legal custody to Mother was in the best interest of the children. Father filed timely objections to the magistrate's decision. The juvenile court overruled Father's objections and granted Mother's motion for legal custody. The trial court terminated the agency's protective supervision and issued visitation and child support orders for Father. Father filed a timely appeal in which he raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT'S FINDING THAT LEGAL CUSTODY TO [MOTHER] WAS IN THE BEST INTEREST OF THE CHILDREN IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]

{¶8} Father argues that the juvenile court's award of legal custody to Mother was against the manifest weight of the evidence. This Court disagrees.

On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶9} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the

[finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21.

{¶10} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 9th Dist. Summit No. 27952, 2016-Ohio-1330, ¶ 12. The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 9th Dist. Summit Nos. 26976, 26977, 2014-Ohio-2748, ¶ 16. In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the child's adjustment to his or her environment; the mental and physical health of all persons involved; the parents' history of providing support and honoring companionship

orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a parent plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶11} Throughout the proceedings below, CSB supported an award of legal custody of the children to Father. On appeal, however, the agency argues that the juvenile court's award of legal custody to Mother was not against the manifest weight of the evidence.

{¶12} Mother and Father both have a significant substance abuse history, and each had a case plan objective requiring drug and alcohol assessments, follow up care, and random urine screens. The CSB caseworker testified that both parents were compliant and consistently tested negative for illegal drugs. Father completed treatment at IBH and an aftercare program, while Mother participated in ongoing Suboxone treatment. Although Father admitted to a long history of using cocaine and methamphetamine, he reported that his main problem was with alcohol. Upon questioning by the magistrate, the caseworker conceded that, although Father was subject to random urine screens, the 24-hour submission window would have allowed him to test negative for alcohol use, given the limited time that alcohol remains detectable in a person's system.

{¶13} Father obtained legal custody of the children in early 2013. He admitted that he used cocaine and methamphetamine "[o]ff and on" the whole time he had custody of the girls. The caseworker expressed a concern that Mother allowed her brother to stay in her home for a few days and the brother overdosed on heroin during that time. Mother denied knowing that her brother was using drugs. Mother's counselor verified that Mother told her that she was not aware of her brother's current drug use. The caseworker did not believe Mother and testified that the counselor reported that Mother admitted she knew of her brother's drug use, despite the counselor's testimony to the contrary. Nevertheless, the agency expressed no similar concerns

about Father, despite his admission that he had regularly used drugs with Mother's brother. Father admitted that he last used cocaine and methamphetamine two days before entering court-ordered drug treatment at IBH. He purposefully lied to Mother about his commitments to, first, Oriana House, and second, IBH, instead telling her that he was leaving the area to work so that he would not have to fight to retain custody of the children.

{¶14} The kindergarten teacher for both H.O. and K.O. testified that she was concerned about certain disclosures made to her by the children. The children reported that there were multiple men living in their home with Father, and that the children and Father slept in the basement. It was later determined that the children were not sleeping in their own bedroom because of a pest infestation. One of the girls also told her teacher that she was upset because Father had thrown an outfit that Mother had given the child in the mud.

{¶15} Father later lied to the teacher about the reason for his leaving the children with Mother. He sent a note to the teacher indicating that he was going to Florida to work, rather than informing the school that he would really be nearby at Oriana House and IBH. After Father left the children with Mother to enter drug treatment, both the teacher and the school resource officer noticed a marked change in the demeanors and appearance of the children. They testified that the girls were cleaner, calmer, more rested, and happier when living with Mother who established a routine for them. In addition, the teacher noticed that the children had rarely completed their homework when in Father's care, while Mother ensured the children's completion of all assigned, as well as additional, work.

{¶16} Father owns a home but it was not habitable at the time of the hearing, as he was in the process of renovating it for sale. Instead, he was living with his sister who had temporary custody of the children. The paternal aunt's husband and another young girl also lived in the

home. The aunt's teenage son lives with his father in Seattle, but came for a visit while the children were in the home. The son sexually abused the aunt's daughter and was adjudicated delinquent by reason of that act. H.O. reported to Mother and the child's counselor that the son also touched her inappropriately. Because the child would not discuss the matter with an intake worker at CSB, the agency closed the matter as unsubstantiated. Father refused to believe the child, asserting that he does not consider either child honest at the present time.

{¶17} Father and the guardian ad litem both testified that Father was welcome to remain in the paternal aunt's home indefinitely. After the hearing concluded, however, the guardian ad litem submitted a supplemental report raising concerns about Father's housing stability. Specifically, the guardian ad litem reported that Father and the paternal aunt's husband got into an altercation necessitating the intervention of the police. Alcohol use was a factor in the altercation. Based on that incident, Father was no longer welcome in the paternal aunt's home. He thereafter went to stay in his girlfriend's home and took the children with him, despite the paternal aunt's temporary custody. There is no evidence in the record regarding Father's girlfriend and whether she would provide an appropriate environment for the children.

{¶18} The guardian ad litem also reported that both Mother and H.O. separately told her that Father had been sleeping in the same bed as H.O. and telling the child to touch him inappropriately. Although the guardian ad litem reported the allegations to CSB, she was unable to communicate with the caseworker despite multiple attempts. Due to Father's hostility towards the guardian ad litem via text messages after the conclusion of the hearing, the guardian did not visit Father and could not report his side of the story.

{¶19} Mother lives in a home with her fiancé and their four-year old child. Despite the dependency action involving H.O. and K.O., CSB never initiated a case or other intervention

regarding that child. Mother is a homemaker. Her fiancé is employed and supports the family. Mother's name is on the lease for their home.

{¶20} Father is employed as a construction subcontractor. His employment opportunities are somewhat limited during the winter months. Father must rely on coworkers for rides to work sites, because he does not have a valid driver's license.

{¶21} During the hearing, both the caseworker and the guardian ad litem testified that both Mother and Father were suitable custodians for the children. Both had completed their case plan objectives and appeared to have remedied the conditions which led to the removal of the children. While the guardian ad litem initially supported returning the children to the legal custody of Father, she changed her recommendation based on the testimony of other witnesses during the hearing. The guardian ad litem opined that Mother provided a more stable environment for the children. Based on her observations of the interaction between the children and their parents, the guardian ad litem recognized a stronger bond between the children and Mother. In addition, Mother possessed a valid driver's license which would allow her to transport the children in both routine and emergency situations. Father, on the other hand, had not had a valid license for fifteen years, and he was still not in a financial position to have his license reinstated. He relied on his sister's husband for transportation for the children. After the incident between Father and the paternal aunt's husband after the hearing, however, that arrangement for transportation was questionable. The multiple allegations regarding Father's behavior subsequent to the hearing only bolstered the recommendation of the guardian ad litem that the juvenile court award legal custody to Mother in the best interest of the children.

{¶22} The guardian ad litem opined that the children were mature enough to express genuine desires regarding their custody. Although eight-year old H.O.'s wishes had fluctuated,

she told the guardian ad litem that she wanted to live with Mother and see Father on the weekends. Six-year old K.O. stated that she wanted to alternate week-long stays with Mother and Father.

{¶23} Based on a review of the record, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in awarding legal custody of H.O. and K.O. to Mother. The evidence demonstrates that Mother's home environment offers the children stability, safety, and consistency. The girls have a strong bond with Mother and have developed a close relationship with their younger half-sister and Mother's fiancé. Mother has demonstrated the ability to meet all of the children's basic needs. School employees familiar with the children have noted that H.O. and K.O. are calmer and more prepared for school when in Mother's care. On the other hand, although Father had earlier been able to provide a stable and secure environment for the children, there was evidence that his circumstances had changed. His own home had become uninhabitable due to ongoing renovations. It was unlikely that he would be able to remain in his sister's home due to an altercation with his brother in law. Although Father had completed his substance abuse case plan objective, recent allegations indicated that he had relapsed. Mother, however, had consistently demonstrated a commitment to sobriety. Significantly, Mother took seriously the children's concerns and allegations. Father, however, only chose to believe the children when they said things with which he agreed. Of concern is Father's dismissal of H.O.'s allegations of inappropriate touching by the paternal aunt's teenage son, who was adjudicated delinquent by reason of the same conduct involving his half-sister. Under the circumstances, the juvenile court's finding that an award of legal custody of H.O. and K.O. to Mother was in the best interest of the children was not against the manifest weight of the evidence. Accordingly, Father's assignment of error is overruled.

III.

**{¶24}** Father's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

ANGELA M. KILLE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and JACQUENETTE S. CORGAN, Assistant Prosecuting Attorney, for Appellee.

DENISE FERGUSON, Attorney at Law, for Appellee.