[Cite as *In re B.B.J.*, 2025-Ohio-131.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

IN RE: B.B.J.

C.A. No.    24CA012082


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    21JC62643

DECISION AND JOURNAL ENTRY

Dated: January 21, 2025

---

SUTTON, Judge.

{¶1}    Appellant, H.J. ("Mother"), appeals from a judgment of the Lorain County Court of Common Pleas, Juvenile Division, that placed her minor child in the legal custody of the child's foster parents, J.W. and S.W. ("Custodians"), and denied an alternative motion to place the child with another non-relative couple ("Friends"), who are friends of the father's sister. This Court affirms.

I.

{¶2}    Mother is the biological mother of B.B.J., born April 2, 2021. The child's father ("Father") did not appeal from the trial court's judgment. Mother has two older children who were removed from her custody in prior juvenile cases, based on concerns about substance abuse and domestic violence in the home. Those children are not parties to this appeal.

{¶3}    Although this case has a long and complicated history, this Court will focus on the basic facts relevant to this appeal. Lorain County Children Services ("LCCS") became involved

with B.B.J. shortly after his birth due to Mother's substance abuse during pregnancy and the child's need to receive medical treatment in the neonatal intensive care unit because he experienced symptoms of drug withdrawal. Upon his release from the hospital, the juvenile court placed B.B.J. in the emergency temporary custody of LCCS. The agency placed the child in the home of Custodians, who also had placement of an older half-sibling at that time. The half-sibling was later placed in the legal custody of that child's father. B.B.J. remained in the home of Custodians throughout this case.

{¶4} The agency's initial complaint was dismissed because the case did not proceed to adjudication and disposition in a timely manner. LCCS filed a new complaint to commence this case on September 21, 2021. The complaint alleged that B.B.J. was an abused, neglected, and dependent child because of both parents' ongoing substance abuse, domestic violence in their relationship, and their lack of stable income and housing. B.B.J. was later adjudicated an abused, neglected, and dependent child. The child was placed in the temporary custody of LCCS, and the trial court adopted the case plan as an order of the court. No one disputes, however, that neither parent made substantial progress on the reunification requirements of the case plan during the next two years. Because neither parent was prepared to provide this child with a suitable home and LCCS was unable to find a suitable family member to care for the child, this case ultimately focused on placing B.B.J. in the custody of non-relatives.

{¶5} Custodians expressed an interest in custody of B.B.J. early in this case. Additionally, Father's sister referred Friends to LCCS as potential custodians for the child. After being approved to have visitation, Friends began having regular visits with the child in their home. By the end of this case, Friends were having B.B.J. for visits in their home every other weekend.

**{¶6}** The final dispositional hearing was held before a trial judge because the magistrate assigned to the case left his employment with the court. At the dispositional hearing, the court considered the competing dispositional motions to place the child in the legal custody of Custodians or Friends. The court heard evidence that each couple seeking legal custody of B.B.J. had a positive relationship with the child, would be able to provide him with an appropriate permanent home, and would facilitate visitation between the child and his parents and other biological relatives.

**{¶7}** Ultimately, however, the trial court was persuaded by the opinion of the guardian ad litem that the child should be placed with Custodians, as he had been living in their home for his entire two-year life and was thriving in their care. The guardian ad litem did not believe that it would be in the child's best interest to uproot him from Custodians' home, simply to place him in the home of another non-relative couple who did not have significant ties to either parent's family. Furthermore, the guardian ad litem emphasized that the parents continued to struggle with substance abuse and other problems, which required supervision or monitoring of their interaction with the child. He believed that Custodians had demonstrated a better ability to set appropriate boundaries on the parents' interaction with the child. Consequently, the trial court placed the child in the legal custody of Custodians and granted each parent supervised visitation with the child for a minimum of 4 hours every other weekend.

**{¶8}** Mother appeals and raises two assignments of error. Custodians filed a brief to support the trial court's judgment. Although Friends, Father, and LCCS were represented by counsel and participated in the final dispositional hearing, they did not file briefs in this appeal.

II.

## ASSIGNMENT OF ERROR I

THE COURT ERRED IN ALLOWING HEARSAY TESTIMONY CREATING AN UNFAIR BIAS OF THE INTENTIONS OF THE PARENTS AND THE CAREGIVERS AND VIOLATING JUV.R. 34 WHERE HEARINGS DEALING WITH PERMANENT CUSTODY [ARE] LIMITED BY [THE] RULES OF EVIDENCE.

{¶9} Mother's first assignment of error challenges the trial court's admission of certain hearsay evidence at the final dispositional hearing. Mother's argument is based solely on the legal premise that "hearings dealing with permanent custody" are limited by the rules of evidence. *See, e.g.* Juv.R. 34(I). At the final dispositional hearing in this case, however, there was no pending motion for permanent custody of B.B.J. to LCCS. Instead, the motions before the trial court were two competing motions for legal custody to Custodians or to Friends. The rules of evidence did not apply in the legal custody proceeding and the Ohio Supreme Court has recently emphasized that "[i]n [a] legal-custody proceeding, the juvenile court was explicitly authorized under R.C. 2151.35(B)(2)(b) to hear and consider hearsay evidence. *See also* Juv.R. 34(B)(2)." *In re R.G.M.*, 2024-Ohio-2737, ¶ 18. Mother's first assignment of error is overruled because it is based on a faulty premise.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ABUSED ITS DISCRETION UNDER O.R.C. 3109.04(F)(1)(A) BECAUSE IT UNFAIRLY DISCREDITED THE PARENTS['] WISHES FOR THE BEST INTEREST OF THE CHILD BECAUSE OF THEIR OWN PERSONAL STRUGGLES.

{¶10} Mother's second assignment of error challenges the trial court's decision that legal custody to Custodians was in the best interest of B.B.J. An award of legal custody must be supported by a preponderance of the evidence. *In re M.F.*, 2016-Ohio-2685, ¶ 7 (9th Dist.). "Preponderance of the evidence entails the greater weight of the evidence, evidence that is more

probable, persuasive, and possesses greater probative value." (Internal quotations omitted.) *Id.* In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal citations and quotations omitted.) *Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶11} "Following an adjudication of neglect, dependency, or abuse, the juvenile court's determination of whether to place a child in the legal custody of a parent or a relative is based solely on the best interest of the child." *In re K.H.*, 2016-Ohio-1330, at ¶ 12 (9th Dist.). No specific test or set of criteria is set forth by statute regarding an award of legal custody, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the child. *In re B.B.*, 2016-Ohio-7994, ¶ 18 (9th Dist.), quoting *In re N.P.*, 2004-Ohio-110, ¶ 23 (9th Dist.).

{¶12} The juvenile court is guided by the best interest factors enumerated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 2008-Ohio-5003, ¶ 9 (9th Dist.), citing *In re T.A.*, 2006-Ohio-4468, ¶ 17 (9th Dist.). Those factors include the interaction and interrelationships of the child, the child's wishes, the custodial history of the child, the child's need for permanence, and whether any of the factors of R.C. 2151.414(E)(7)-(11) apply to this case. R.C. 2151.414(D)(1)(a)-(e); *see also In re B.C.*, 2014-Ohio-2748, ¶ 16 (9th Dist.).

{¶13} The juvenile court may also consider the best interest factors in R.C. 3109.04(F)(1). *In re K.A.*, 2017-Ohio-1, ¶ 17 (9th Dist.). While many factors overlap with those set forth in R.C.

2151.414(D)(1), separate factors include the parents' wishes, the child's adjustment to "home, school, and community[,]" and the proposed custodian's likelihood to honor and facilitate visitation or parenting time. R.C. 3109.04(F)(1)(a),(d),(f).

{¶14} Mother does not dispute the trial court's findings on the majority of the best interest factors, including the opinion of the guardian ad litem about the child's best interest, that Custodians had been providing B.B.J. with a suitable home for his whole life, that the child had become closely bonded with their family and was comfortable in their home, or that Custodians had demonstrated a better ability to appropriately supervise or monitor the parents' ongoing interaction with the child. Instead, Mother's only argument is that the trial court did not adequately consider the wishes of both parents that B.B.J. be placed in the legal custody of Friends.

{¶15} As detailed above, the parents' wishes were one of many factors to be considered by the trial court. The best interest factors set forth in R.C. 2151.414(D) and 3109.04(F) are intended to be weighed by the trial court, as no one factor is controlling. *See, e.g.*, *In re Schaefer*, 2006-Ohio-5513, ¶ 64; *In re Whitaker*, 36 Ohio St.3d 213, 217 (1988). As the trial court explained in detail, the majority of the best interest factors supported maintaining B.B.J. in his current home with Custodians.

{¶16} Mother does not assert that the trial court failed to consider the parents' wishes in its best interest determination, but only that the court did not assign enough weight to their expressed wishes. In its detailed judgment entry, however, the trial court set forth many reasons that it did not give "significant weight" to the wishes of the parents, including that they continued to struggle with substance abuse problems. The trial court also found that some of Father's testimony was not credible, and it expressed concern that Father seemed to expect that he would have some type of joint custody if B.B.J. were placed in the legal custody of Friends.

**{¶17}** Moreover, Mother is the only party who has appealed this judgment to raise a concern about the trial court discrediting the parents' wishes, yet she did not express her wishes to the trial court. Although Father was present for part of the hearing and testified regarding his wishes, Mother did not appear or testify. The only evidence about Mother's wishes was presented through the testimony of other witnesses.

**{¶18}** The trial court heard substantial evidence on the other best interest factors to support its determination that legal custody to Custodians was in the best interest of B.B.J. The trial court did consider Mother's wishes, even though she did not appear or testify, but it found that the parents' wishes did not outweigh the many other best interest factors that supported granting legal custody of B.B.J. to Custodians. Mother has failed to demonstrate that the trial court lost its way in weighing the evidence and placing the child in the legal custody of Custodians. Mother's second assignment of error is overruled.

## III.

**{¶19}** Mother's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

BETTY SUTTON
FOR THE COURT

STEVENSON, P. J.
HENSAL, J.
CONCUR.

APPEARANCES:

MARC STOLARSKY, Attorney at Law, for Appellant.

JAMES A. BARILLA, Attorney at Law, for Appellee.

ERIN DOWNS, Attorney at Law, for Appellee.

RICHARD J. MARCO, Attorney at Law, for Appellee.

RANDI SARGENT, Attorney at Law, for Appellee.

MICHAEL J. TOWNE, Guardian ad Litem.