[Cite as *In re H.S.*, 2019-Ohio-1878.]

STATE OF OHIO         )                IN THE COURT OF APPEALS
                         )ss:             NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT    )

IN RE: H.S.

                                         C.A. No.     29011

                                         APPEAL FROM JUDGMENT
                                       ENTERED IN THE
                                       COURT OF COMMON PLEAS
                                       COUNTY OF SUMMIT, OHIO
                                       CASE No.    LC 06-08-0132

DECISION AND JOURNAL ENTRY

Dated: May 15, 2019

---

CARR, Judge.

{¶1} Appellant Grandmother appeals from the judgment of the Summit County Court of Common Pleas, Juvenile Division, that ordered that the child H.S. shall remain in the legal custody of Mother. This Court affirms.

I.

{¶2} Mother is the biological mother of H.S. (d.o.b. 4/2/06). She was 18 years old and unmarried when she gave birth to the child. Because Mother was unable to provide proper care and financial support for the child, Grandmother filed a complaint in the juvenile court for legal custody of H.S. in August 2006, when the child was four months old. Mother, Grandmother, and the biological father of the child entered into an agreement that, because the parents were unable to provide proper care and support for the child, Grandmother would become the legal custodian of H.S. The juvenile court entered judgment incorporating the parties' agreement as the order of the court and granting legal custody to Grandmother. Mother and the biological father were to

have visitation with the child as the parties might agree. Neither parent was obligated to pay child support. Shortly after Grandmother obtained legal custody of H.S., the biological father ceased maintaining any relationship with the child. The biological father has not participated in any further proceedings below or on appeal.

{¶3} In March 2011, Mother filed a motion to modify legal custody of H.S., alleging a change of circumstances of the child who had begun living with Mother about a year earlier, based on an agreement by Mother and Grandmother to transition the child back into Mother's home. Mother further alleged that it was in the child's best interest to be returned to her legal custody, in large part because the child had established a relationship with everyone, including her half- and step-siblings, in Mother's household. Mother also sought to establish a visitation schedule for H.S. and Grandmother. Pending a hearing on the motion, the magistrate ordered the child into the temporary custody of Mother. The subsequently scheduled hearing could not proceed due to the failure to perfect service on the child's father. Nevertheless, after learning that Mother and Grandmother had decided in January 2010, to let H.S. live with Mother during the week and with Grandmother on the weekends, the magistrate issued interim orders continuing the child in Mother's temporary custody. In addition, the magistrate ordered Mother to enroll in parenting classes and individual counseling, to arrange for the child to be evaluated by a counselor, and to allow the child to visit with Grandmother at least every other weekend.

{¶4} At the following status hearing, Mother, Grandmother, and the child's father all agreed that H.S. should remain in the temporary custody of Mother and that Mother should continue her parenting classes and both her and the child's individual counseling. At a subsequent pretrial, the magistrate referred the parties to mediation to try to resolve the pending custody, visitation, and child support issues. Based on an agreement the parties reached during

mediation, the magistrate placed H.S. in the legal custody of Mother, granted Grandmother visitation every other weekend, ordered that the child remain in counseling until her counselor determined that the goals for the child had been met, and ordered Mother and Grandmother to confer with an attorney to ensure that Grandmother would receive legal custody of H.S. in the event of Mother's death. The magistrate noted that the parties reported that the child had been diagnosed with adjustment disorder with aggressive and defiant conduct attributes. No party filed objections, and the juvenile court adopted the magistrate's decision and docketed the case closed on September 8, 2011. Accordingly, Mother's rights as the sole legal custodian of the child were restored as of that date.

{¶5} Almost five years later in August 2016, Mother filed a motion seeking to modify and limit Grandmother's visitation with the child based in part on Grandmother's alleged interference with Mother's custody. Due to the contentious relationship between the parties, the juvenile court appointed a guardian ad litem for the child. In the interim, the court maintained visitation between Grandmother and H.S. Thereafter, Grandmother filed a complaint for legal custody. The magistrate dismissed Grandmother's complaint and directed her to re-file her request as a motion to modify custody. In her re-filed motion for legal custody, Grandmother alleged that a change of circumstances had occurred in that Mother was unfit, and that a change of custody was in the best interest of the child.

{¶6} Before the trial court could hold a hearing on the parties' competing motions, Mother and Grandmother filed a series of motions seeking restraining orders and contempt findings. In August 2017, the magistrate sua sponte issued a "judgment entry" ordering placement of the child in the temporary custody of Grandmother, effective immediately. A mere three-and-a-half hours later, Mother filed an emergency motion to stay that "judgment" and a

motion to set aside the order based on the magistrate's having issued the temporary custody order sua sponte, without explanation, and in the absence of any request by Grandmother or any visitation order for Mother.

{¶7} Three days later, the magistrate issued a decision dismissing Mother's pending contempt motion and granting Mother visitation with H.S. Without expressly ruling on Grandmother's motion for legal custody or Mother's motion to modify Grandmother's visitation, the magistrate purported to have implicitly granted Grandmother's motion. Mother filed timely objections and moved to stay the magistrate's decision. Grandmother filed a motion for interim orders pending the juvenile court's ruling on Mother's objections. The guardian ad litem also filed objections to the magistrate's decision, alleging factual inaccuracies, misrepresentations of the evidence, and erroneous assumptions by the magistrate. The juvenile court stayed the orders in the magistrate's decision and denied Grandmother's motion for interim orders pending resolution of the objections.

{¶8} In her supplemental objections, Mother argued that the magistrate erred by failing to make the required parental unsuitability determination before implicitly placing H.S. in the legal custody of Grandmother. In the alternative, Mother argued that there was no requisite change in circumstances to warrant the implicit modification of legal custody. In addition, Mother argued that it was not in the best interest of H.S. to be placed in the legal custody of Grandmother. In Grandmother's brief in opposition to Mother's objections, she argued that the magistrate applied the correct standard as agreed to by the parties, i.e., that Grandmother was only required to prove the existence of a change in circumstances, rather than parental unsuitability, and that a modification of legal custody was in the best interest of the child. Grandmother reasoned that only one finding of parental unsuitability was necessary in order to

allow the juvenile court to award legal custody to a non-parent. Nevertheless, Grandmother cited examples of Mother's alleged unsuitability as a legal custodian for the child.

{¶9} While the objections were pending, Grandmother moved for an interim order placing H.S. in her temporary custody based on alleged worsening conditions in Mother's home. As Mother did not oppose the motion for interim orders, the magistrate granted Grandmother's motion for temporary custody.

{¶10} The juvenile court issued a judgment sustaining Mother's objections and returning H.S. to the legal custody of Mother. The trial court further denied Mother's motion to modify visitation and ordered that Grandmother shall have visitation with H.S. every other weekend. In its analysis, the juvenile court expressly declined to engage in a parental unsuitability determination before making a custody determination because it concluded that Mother's unsuitability had already once been determined when she voluntarily agreed to transfer legal custody to Grandmother in 2006. Instead, the trial court considered Grandmother's motion as a request to "modify a prior allocation of parental rights and responsibilities" pursuant to R.C. 3109.04(E)(1). Accordingly, the juvenile court maintained H.S. in the legal custody of Mother based on a change in circumstances of the child and/or Mother and a finding that it was in the child's best interest to be with Mother. Grandmother filed a timely appeal in which she raises one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT OVERTURNED THE MAGISTRATE'S DECISION AND FOUND IT WAS IN THE BEST INTEREST OF THE CHILD TO RETURN CUSTODY OF THE MINOR CHILD BACK TO MOTHER[.]

{¶11} Grandmother argues that the juvenile court erred by maintaining H.S. in the legal custody of Mother. This Court disagrees.

{¶12} As an initial matter, this Court notes that no party has argued that the juvenile court was required to find that Mother, who was the sole legal custodian of the child, was unsuitable before considering whether to award legal custody to a non-parent. Accordingly, we decline to address that issue. As the parties have restricted their arguments solely to the issue of the best interest of the child, this Court does likewise.

> On appeal, an award of legal custody will not be reversed if the judgment is supported by a preponderance of the evidence. Preponderance of the evidence entails the greater weight of the evidence, evidence that is more probable, persuasive, and possesses greater probative value. In other words, when the best interest of the child is established by the greater weight of the evidence, the trial court does not have discretion to enter a judgment that is adverse to that interest. Thus, our standard of review is whether a legal custody decision is against the manifest weight of the evidence.

(Internal citations and quotations omitted.) *In re M.F.*, 9th Dist. Lorain No. 15CA010823, 2016-Ohio-2685, ¶ 7.

{¶13} The statutory scheme regarding an award of legal custody does not include a specific test or set of criteria, but Ohio courts agree that the juvenile court must base its decision to award legal custody on the best interest of the children. *In re B.B.*, 9th Dist. Lorain No. 15CA010880, 2016-Ohio-7994, ¶ 18, quoting *In re N.P.*, 9th Dist. Summit No. 21707, 2004-Ohio-110, ¶ 23. In that regard, the juvenile court is guided by the best interest factors enunciated in R.C. 2151.414(D) relating to permanent custody. *In re B.G.*, 9th Dist. Summit No. 24187, 2008-Ohio-5003, ¶ 9, citing *In re T.A.*, 9th Dist. Summit No. 22954, 2006-Ohio-4468, ¶ 17. Those factors include the interaction and interrelationships of the children, the children's wishes, the custodial history of the children, the children's need for permanence, and whether any of the factors in R.C. 2151.414(E)(7)-(11) are applicable. R.C. 2151.414(D)(1)(a)-(e); *see also In re*

*B.C.*, 9th Dist. Summit Nos. 26976, 26977, 2014-Ohio-2748, ¶ 16. In addition, the juvenile court may also look to the best interest factors in R.C. 3109.04(F)(1) for guidance. *In re K.A.*, 9th Dist. Lorain Nos. 15CA010850, 15CA010860, 2017-Ohio-1, ¶ 17. While some factors overlap with those above, others include the children's adjustment to their environment; the mental and physical health of all persons involved; the parties' history of providing support and honoring companionship orders; certain indicia of violence, abuse, or neglect in any household involved; and whether a party plans to or has established a residence outside of Ohio. R.C. 3109.04(F)(1).

{¶14} H.S. was eleven years old at the time of the hearing. She has done well in school. She has been in counseling to address issues of anxiety, depression, and self-esteem.

{¶15} The child's custodial history is detailed above. She has had a consistent relationship with both Mother and Grandmother throughout her life. In addition to residing with Grandmother for the first four years of her life, H.S. was under Grandmother's guardianship from October 2014 through June 2015, while Mother was engaged in military training with the National Guard. At all other times, the child was in Mother's legal custody and enjoyed regular visitation with Grandmother. The child is well adjusted to both home environments.

{¶16} H.S. has resided with Mother, Mother's husband whom she calls "daddy," a half-sibling, and a step-sibling for several years. Her stepfather has been the only father-figure the child has ever known. In fact, H.S. always believed her stepfather was her biological father until Grandmother told her that he was not. Although the guardian ad litem reported that the child's counselor indicated that H.S. and her stepfather had a "conflictual relationship," Mother testified that the child and her stepfather are bonded and have a good relationship. The child enjoys a good relationship with her half- and step-siblings. The child has been resistant to Mother's efforts to set limits and discipline her since her return to Mother's legal custody in 2011. As a

result, Mother and the child have some difficulties interacting, but the child told the guardian ad litem that she wants to continue to work on her relationship with Mother through counseling. Mother is committed to continuing both the child's and her own counseling.

{¶17} When H.S. visits Grandmother, the child has the opportunity to interact with her cousins. She is close to one of her cousins with whom she shares a birthday. Grandmother and H.S. are also closely bonded.

{¶18} There is a long history of discord within the maternal family, where family members align themselves in factions and speak negatively about one another. The guardian ad litem referred to the maternal family as "severely fractured," where everyone tells different stories based on their own interests and diverse alliances. Mother and Grandmother have experienced years of friction, in large part stemming from Grandmother's disapproval of Mother's lifestyle and various choices, including marrying her long-time boyfriend.

{¶19} In addition, Grandmother has her own history of family disharmony. She has not spoken to her own siblings or Mother's father in years. H.S. has been privy to the family's negative comments about Mother and is aware of the tension among the people she loves. Grandmother admitted that Mother has reached out to her to try to work out various issues, but Grandmother has often not responded, claiming that she simply does not like to text. Mother's brother testified that family celebrations always devolve into emotional confrontations. Mother's brother described her as "combative" and resistant to Grandmother's attempts to "save" her, concluding that Mother just does not want to be parented. After describing a family event where Mother began yelling and threatening to leave, Mother's brother admitted that he had just moments before made a dismissive comment to her to "suck it up, soldier" in response to a concern Mother had raised.

{¶20} Grandmother and other family members have made multiple referrals to Summit County Children Services ("CSB") regarding the child while in Mother's care. Three of the six allegations concerned abuse by the child's stepfather in 2012 and 2013. In each case, CSB found the allegations to be unsubstantiated. H.S. expressed no fear of her stepfather to the guardian ad litem, who testified that she found the child to be honest during their many discussions. Other allegations concerned substance abuse by Mother and her husband in their home. In each of those cases, CSB found no evidence of drugs in the home. Moreover, none of the three children in the home were able to describe anything that looked like drugs or paraphernalia, indicating that they had not seen such things in Mother's home.

{¶21} The guardian ad litem testified that Mother's home is not unsafe for the child. Although it was very cluttered and could use some cleaning, it was not deplorable. The home was structurally sound, with working utilities and ample food and no safety hazards. All the children have their own bedrooms. Although Grandmother testified that Mother maintains a dirty home, she admitted that she has not seen the inside of Mother's home in years.

{¶22} The child's stepfather works and provides financial support for the family. Mother does not work outside the home, but she has a "Twitch" account whereby she earns money by allowing viewers to watch her play video games. Grandmother expressed concern that Mother lets the three children in her home also participate in spectator online gaming, but Mother testified that the children are always supervised as required by the site regulations. The guardian ad litem observed the children engaging in the activity under the supervision of their parents and noted that the children appear to truly enjoy it. The children are allowed to use the small amounts of money they receive from the site for treats like candy and a small pet.

{¶23} Grandmother raised concerns for the child's safety based on Mother's substance abuse history. Mother used drugs as a teenager but had no further problems until she used cocaine on one occasion while working with the National Guard. Thereafter, she successfully completed inpatient drug treatment and was permitted to continue her military employment. Her later separation from the National Guard was as a result of her inability to meet the physical fitness requirements, not her one-time drug use. Despite Mother's assertions that she had maintained sobriety since that relapse, Grandmother insisted that Mother submit to a drug screen. The guardian ad litem facilitated a drug test for Mother who immediately complied and tested negative for all substances. Grandmother then demanded that Mother submit to a hair follicle test, but the guardian ad litem did not support that additional measure, given Mother's negative urine screen and the lack of any indication that Mother was using drugs.

{¶24} Grandmother also raised concerns for the child's safety, testifying that H.S. told her that she sleeps with a butter knife under her pillow because she is afraid of her stepfather's temper. The guardian ad litem reported that the child never expressed any fear of her stepfather to her. Grandmother minimized any concern for the child's safety arising out of Grandmother's habit of keeping a loaded firearm under her mattress because she moves the weapon to a closet when the child is in her home.

{¶25} Visitation has posed some problems for the family. There were no allegations that Mother interfered with Grandmother's time with the child. Grandmother, on the other hand, would frequently not be home to receive the child when Mother dropped her off at the designated time. In addition, Grandmother often failed to return the child to Mother on time. When Mother was away for military training, Grandmother would not allow the child to visit with her stepfather and siblings.

**{¶26}** The guardian ad litem mentioned an in camera interview with the child, although there is no transcript of that hearing in the record. H.S. disclosed that Grandmother tore out some pages from the child's diary, gave her a highlighted article about emotional abuse, and said things that made the child believe that she should record arguments between Mother and her stepfather as evidence for the court proceedings. Grandmother admitted taking the diary pages, but she asserted she did so to prevent the child from getting into trouble with Mother for writing about her stepfather cursing at her. Grandmother also admitted having the emotional abuse article on her home printer which the child would use, but she denied highlighting portions and giving it to the child. The guardian ad litem reported that H.S. began to express her desire to live with Grandmother the same day that the child showed the guardian the emotional abuse document.

**{¶27}** The guardian ad litem testified that H.S. knows too much about the animosity within the family dynamics and that the child's loyalties are torn. As a result, both the guardian ad litem and the child's counselor agreed that H.S. tries to make everyone happy in an impossible situation. The guardian ad litem expressed concern that Grandmother makes deliberate attempts to manipulate the child. Moreover, the record contains multiple examples of Grandmother's efforts to undermine Mother and demean her as a parent, e.g., telling H.S. that her stepfather was not her biological father, refusing to allow the child to take medication that Mother sent with H.S. for use during visitation, causing the child to believe that she was being emotionally abused at home, and using the child as a tool to facilitate an ongoing rift in the family dynamics.

**{¶28}** Although it was a difficult decision for the guardian ad litem, she testified that it was in the best interest of H.S. to remain in the legal custody of Mother, despite the child's

recently expressed desire to be with Grandmother. The guardian ad litem opined that the child's best interest would be served by remaining in her family unit with Mother and her stepfather, where she could continue to address any problems through counseling. In particular, the guardian ad litem testified that it would not be in the child's best interest to experience daily separation from her siblings. The guardian ad litem recommended that H.S. continue to have regular visitation with Grandmother.

{¶29} Based on a review of the record, this is not the exceptional case where the finder of fact clearly lost its way and created a manifest miscarriage of justice in retaining H.S. in the legal custody of Mother. The evidence demonstrates that Mother's home environment provides the child with stability, safety, and security. The child's physical and emotional needs are met in Mother's home. The child has a closely bonded relationship with all household members and has expressed the desire to continue working on issues with Mother through counseling. Although she recently expressed a desire to live with Grandmother, the guardian ad litem was deeply concerned by repeated instances of Grandmother's manipulation of the child. Mother had a troubled childhood but made great efforts to attain stability and sobriety as an adult. Grandmother experienced her own difficulties in maintaining healthy family relationships and appears to be unable to squelch that ongoing dynamic in her relationship with Mother, despite evidence of Mother's attempts to communicate amicably in the best interest of the child. The evidence indicates that Grandmother has worked to divide the child's loyalties, causing H.S. additional stress and anxiety. Given Mother's efforts to provide a safe, secure, and stable home environment for the child, while facilitating visitation with Grandmother, the juvenile court's finding that retaining H.S. in the legal custody of Mother was in the child's best interest was not

against the manifest weight of the evidence. Accordingly, Grandmother's assignment of error is overruled.

III.

**{¶30}** Grandmother's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

CALLAHAN, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

SILAS M. PISANI, Attorney at Law, for Appellant.

DALE G., pro se, Appellee.

JILLIAN A., pro se, Appellee.

LINDA SELL, Guardian ad Litem.